McFarland, J.,
delivered the opinion of the Court.
This is an action under the Statute, by the Administratrix of Annie Connor, against the L. & N. R. R. *21 Co., to recover damages for injuries causing the death ■of said Annie, she being at. the time an infant of about eighteen months. There was a verdict for •$3,000. A new trial was refused, and judgment entered, from which the defendant has appealed in error.
The fact that the child was killed by the engine and cars of the company is admitted, and it is not seriously denied that under our statute the action may be maintained by the personal representative of an infant: (See Bream v. Brown, 5 Col., 169.) It is argued that the Court erred in placing the burthen on the Railroad Company of disproving negligence. It is not denied that by the express provisions of our statute, the burthen is upon the company to prove that it had complied with the requirements of sections 1166 and following of the Code, for the prevention of accidents. But it is argued that the effect of the Judge’s charge was not only to require this, but also to require the company to disprove any other negligence; that is, to show that its road, cars, engines, etc., were in good order, according to the present state of the art, whereas, it is argued, that as to these matters the statute has not thrown the burthen upon the defendant, but the burthen is upon the plaintiff in the cause to show that there was negligence. To this we answer, that at common law, the killing being proved, the onus is thrown upon the defendant to •show that it was guilty of no negligence, and that the accident was unavoidable. The statute in this respect -simply affirms a common law principle. This is distinctly held in the case of Horne v. The Memphis and *22 Ohio R. R. Co., 1 Col., 77. In order for the company to show that it complied with that part of the statute requiring' the whistle to be sounded, the brakes, to be put down, and every possible means employed, to stop the train and prevent an accident when any person appears upon the track, it must of necessity show that it had the whistle, the brakes, and the means to be thus employed. The jury were told that the road, its machinery, and equipments, should be according to the present state of the art. And it is. manifest that the Judge intended, and the jury must have so understood him, that the company were not required to employ all possible improvements, but a reasonable conformity in these respects was required.
Next, it is urged that the charge of the Court makes the duty of the engineer and other employes, to the person on the track paramount to their duty to the passengers upon the train.
The Court told the jury, that “it is the duty of all who are engaged in running the train, in whatever department they may be employed, to give the-entire energies of their bodies and minds to bring into requisition all means at their command to stop, the train as soon as possible and prevent the accident.”' It is in proof that there was only one brakeman to, two brakes. There was proof indicating that if there-had been a brakeman to each brake, they might have stopped the train sooner; but the conductor proved that in his opinion this could not have been done without danger to the passengers; and it was also, proved that it was not customary to have more than, *23 one brakeman to the brakes on two cars. It can not be maintained that the charge led the jury to believe that the company were liable alone for not having a brakeman to each brake, for they were expressly told that if the' proof showed that one brakeman to two cars is sufficient for all ordinary purposes, then the company would not be liable for not having one to each car. The charge of the Court is not stronger than the letter of the statute. It is, “ Every railroad company shall keep the engineer, fireman, or some other person upon the locomotive, always upon the lookout- ahead, and when any person, animal, or other obstruction appears upon the road, the alarm whistle shall be sounded, the brakes .put down, and every possible means employed to stop the train and prevent an accident.” The objection is, that this is not to be done so as to endanger the passengers upon the train. We do not say that the means employed tó stop the train, should be such as would cause imminent risk and danger to the passengers, but a slight increase of the danger to the passengers will be no excuse for failing to follow the positive mandate of the statute. The facts of the case call for no further discussion of the question. There is no proof that any of the means usually employed to stop the train, would be at great or imminent danger to passengers. It would not do to hold that the employes running the train, shall be allowed to excuse themselves from failing to comply with the positive requirements, by the mere expression of an opinion that to do so would endanger the passengers. The nature and *24 extent of that danger should at least be more clearly shown.
The next point made upon the charge is, so much of it as is in the following language: “ The amount of damages is for you to determine, and not the Court; but in determining that amount, you should be governed by the suggestions of the law,” which he then proceeds to lay down. The criticism is, that rules for the measure of damages should not have been •called “ suggestions of the law;” that the jury did not understand that the law thus indicated was binding on them. We. think the objection hypercritical. The jury were told that they should be governed by these suggestions, and we presume they so understood the Judge.
Finally, it is earnestly argued that ' the judgment should be reversed, because the verdict is not well supported by evidence/ It is important, in cases of this character, to bear in mind that the judgment of the court below is to be taken as prima faoie correct; the burthen is upon the plaintiff in error to show affirmatively that errors exist, and point them out. And again, that in cases of conflict in the evidence, where the jury have adopted one view of the facts disclosed by the witnesses, and the Circuit Judge is satisfied to let the verdict stand, we can not interfere. The reason of this rule has been often elaborated. In this connection it is argued that the bill of exceptions shows the Circuit Judge thought that the verdict was not supported by the evidence, and so expressed himself. In accordance with the holding of our pre *25 decessors, the Circuit' Judge instructed the jury, that if the death of the child from the injury was instantaneous, the plaintiff could not recover. Upon the argument of the rule for a new trial, the Judge said to the plaintiff’s attorney, if he would agree to leave out of the bill of exceptions certain statements in the testimony of the plaintiff, there would be no testimony to support the finding upon this point; he believed the finding was against the charge, upon this question. Believing that the former decision would be overruled, it was agreed to so present the case as to raise the question in this Court. So it is not denied that, the Circuit Judge was of opinion that the finding was against his charge, upon that question; and there is no evidence to support the finding that the child did not die instantaneously, in the common acceptation of that term. But this Court has since held, that the charge upon this question was erroneous, and the finding of the jury should not therefore be disturbed on this ground. We 'are bound to assume that the Circuit Judge was of opinion that upon the merits of the case, the finding of the jury was well sustained by the evidence; his remarks bear no other construction, and we can not suppose that he would have refused a new trial had he thought differently. There is certainly strong evidence upon the part of the company, going to show that they complied with the provisions of the statute. The engineer proves that he was at his place, on the lookout ahead; that he saw the child put its foot on the track, when the train was within one hundred and fifty yards; that he blew *26 the alarm whistle, reversed the' engine, and opened the sand box • that this exhausted his power — was all that he could do; that he could tell from the running of the train that the brakes were put down. And there is other evidence to this effect. On the other hand, there is evidence which, if true, goes to show that the child was on the track some time before, and could have been seen by the engineer at a much greater distance. The jury seem to have adopted this latter view of the evidence, and we can not undertake to say that they were wrong. We have held, and the statute admits of no doubt on this point, that unless the defendant shows that the precautions were observed, that they must be held liable, although the jury might be of opinion that the accident would have happened, even if the precautions had been observed. It can not be denied that the statute is very stringent, but in proportion to the danger that might occur from the unrestrained power in the hands of these great and powerful corporations, must be the degree of diligence to which they are held in the protection and preservation of human life, although this may sometimes result in hard verdicts against them.
Affirm the judgment.